IN THE CHAMBERS OF CIRCUIT JUDGE SANDRA LYNCH
FIRST CIRCUIT, BOSTON, MASSACHUSETTS



MICHAEL G. KESELICA,
Petitioner

2007 JUN 12 A 11: 14

FILED IN CLERKS OFFICE
US COURT OF APPEALS
FOR THE FIRST CIRCUIT

v. Civil Action No. ________

ASHBELL T. WALL,
Respondent

PETITION FOR WRIT OF HABEAS CORPUS SUBSECTION 2241

COMES NOW Petitioner, Michael Keselica, pro se, and respectfully moves Circuit Judge Sandra Lynch, pursuant to 28 U.S.C. subsection 2241(c)(3), to grant Petitioner's Petition for Writ of Habeas Corpus in the above captioned case on the grounds that Petitioner is unlawfully detained at the Adult Correctional Institution in Cranston, Rhode Island on a Governor's Warrant of Rendition to the Commonwealth of Virginia. This justice has jurisdiction pursuant to 28 U.S.C.S. subsection 2241(a).

FACTS AND TRAVEL

1. On September 17, 1999, the Circuit Court for Fairfax County, Virginia found Petitioner in violation of his probation for missing several restitution payments and for failure to be truthful to his Maryland probation officer regarding travel instructions to Rhode Island. That Court then revoked Petitioner's probation, sentenced Petitioner to a term of incarceration of seven (7) years and reduced Petitioner's restitution balance to a

civil judgment. One week later, Petitioner was released on an appeal bond.

2. On June 21, 2001, Petitioner was arrested at his home in Maryland as a fugitive from justice from Virginia on a violation of probation show cause bench warrant, even though Petitioner's probation was terminated by order of the Virginia Court.

3. Petitioner contested extradition because he was not a fugitive from justice and the fugitive warrant was dismissed by the State of Maryland, on July 20, 2001.

4. On December 31, 2003, Petitioner was again arrested as a fugitive from justice from Virginia on the same violation of probation bench warrant. Petitioner again contested extradition and was released on February 18, 2004, as Virginia failed to submit a Governor's Warrant.

5. On February 19, 2004, Petitioner was again arrested as a fugitive from justice from Virginia on the same violation of probation bench warrant. Petitioner again contested extradition and after a June 4, 2004 hearing on Petitioner's Writ of Habeas Corpus Petitioner was granted his release after successfully proving that (1) the extradition documents were technically deficient and (2) that Petitioner was not a fugitive from justice.

6. On August 3, 2006, Petitioner was again arrested as a fugitive from justice from Virginia on the same violation of probation

bench warrant, this time in Rhode Island.[1] Petitioner again contested extradition.

7. On September 12, 2006, Petitioner filed a Writ of Habeas Corpus in the District Court for Kent County, Rhode Island, raising the following arguments:

(A) PETITIONER'S RELEASE ON JUNE 4, 2004 FROM A WRIT OF HABEAS CORPUS CHALLENGING HIS ARREST UNDER MARYLAND GOVERNOR ROBERT EHRLICH'S RENDITION WARRANT AS A FUGITIVE FROM JUSTICE FROM VIRGINIA FOR VIOLATING THE TERMS OF HIS PROBATION IS RES JUDICATA TO THIS CURRENT EXTRADITION PROCEEDING IN RHODE ISLAND;

(B) A SECOND EXTRADITION PROCEEDING OF PETITIONER IN RHODE ISLAND ON THE SAME FUGITIVE CHARGE CONSTITUTED DOUBLE JEOPARDY; AND

(C) PETITIONER'S VIRGINIA TERM OF PROBATION WAS (1) TERMINATED BY ORDER OF THE VIRGINIA COURT AND (2) HAD EXPIRED PRIOR TO THE ISSUANCE OF VIRGINIA'S FUGITIVE WARRANT THEREFORE PETITIONER IS CURRENTLY ILLEGALLY INCARCERATED AS A FUGITIVE FROM JUSTICE FROM VIRGINIA FOR VIOLATING THE TERMS OF HIS PROBATION.

8. The District Court for Kent County never ruled on Petitioner's Petition for Writ of Habeas Corpus.

9. On January 5, 2007, the Superior Court for Kent County, Rhode

[1] Petitioner moved back to Rhode Island on June 7, 2006 after the death of his Mother to care for his elderly Father.

Island denied Petitioner's Petition for Writ of Habeas Corpus. In denying Petitioner's Writ, that Court stated that: (1) it could not see releasing Petitioner based on the technical defects of the extradition documents; (2) res judicata cannot be used as an affirmative defense; (3) the material misstatements of fact in the requisition affidavit were merely non-prejudicial clerical errors. Furthermore, that Court failed to rule on Petitioner's Full Faith and Credit Clause of the U.S. Constitution argument.

10. On February 15, 2007, the Rhode Island Supreme Court denied Petitioner's Petition for Writ of Habeas Corpus, without hearing.

11. On February 20, 2007, Petitioner filed a Subsection 2241 Petition for Writ of Habeas Corpus in the U.S. District Court for Rhode Island. Petitioner raised the following habeas claims:

(A) THE WRIT OF HABEAS CORPUS SHOULD BE GRANTED BECAUSE THE EXTRADITION PAPERS IMPROPERLY CHARACTERIZE THE PETITIONER AS A FUGITIVE FROM JUSTICE THEREBY DENYING RHODE ISLAND'S GOVERNOR HIS DISCRETIONARY AUTHORITY UNDER THE LAW TO DENY VIRGINIA'S REQUISITION DEMAND.

(B) DEPUTY COMMONWEALTH ATTORNEY RAYMOND MORROGH'S PERJURED REQUISITION AFFIDAVIT INVALIDATES BOTH VIRGINIA GOVERNOR KAINE'S REQUISITION WARRANT AND RHODE ISLAND GOVERNOR CARCIERI'S RENDITION WARRANT.

(C) PETITIONER IS NOT A FUGITIVE FROM JUSTICE FROM THE COMMONWEALTH OF VIRGINIA.

(D) THE EXTRADITION DOCUMENTS ARE TECHNICALLY DEFICIENT

(E) PETITIONER'S CURRENT EXTRADITION PROCEEDING IS IN VIOLATION OF PETITIONER'S FIFTH AMENDMENT GUARANTEE AGAINST DOUBLE JEOPARDY.

(F) THE COMMONWEALTH OF VIRGINIA HAS NO JURISDICTIONAL BASIS TO ATTEMPT TO EXTRADITE PETITIONER AS A FUGITIVE FROM JUSTICE

(G) THE PETITION FOR WRIT OF HABEAS CORPUS SHOULD BE GRANTED UNDER THE DOCTRINES OF RES JUDICATA AND THE FULL FAITH AND CREDIT CLAUSE OF THE UNITED STATES CONSTITUTION.

12. On March 20, 2007, U.S. Magistrate Judge David Martin denied Petitioner's Habeas 2241 Petition. However, this Magistrate Judge only ruled upon two-and-a-quarter (2 1/4) of Petitioner's seven (7) habeas claims and did so without the authorization required by a U.S. District Judge, pursuant to 28 U.S.C. subsection 636(b)(1)(B).

13. On May 2, 2007, U.S. District Judge Ernest C. Torres adopted Magistrate Martin's March 20, 2007 Report and Recommendation.

14. On May 16, 2007, Petitioner appealed the May 2, 2007 Order of U.S. District Judge Torres to the Court of Appeals for the First Circuit. Petitioner is raising the following claims of error on appeal to the First Circuit:

I. THE U.S. DISTRICT COURT FOR RHODE ISLAND ERRED IN ALLOWING U.S. MAGISTRATE JUDGE DAVID MARTIN TO DENY APPELLANT'S HABEAS 2241 PETITION WITHOUT AUTHORIZATION BY A U.S. DISTRICT JUDGE PURSUANT TO 28 U.S.C. SUBSECTION 636(b)(1)(B) – THIS MAGISTRATE JUDGE LACKED JURISDICTION TO ISSUE A REPORT AND RECOMMENDATION ON APPELLANT'S 2241 HABEAS PETITION.

II. U.S. MAGISTRATE JUDGE DAVID MARTIN ERRED IN DISMISSING APPELLANT'S HABEAS CLAIM I BY STATING THAT RHODE ISLAND GENERAL

LAWS SUBSECTIONS 12-9-8 AND 12-9-3 ARE STATE STATUTES AND FEDERAL HABEAS CORPUS RELIEF DOES NOT LIE FOR ERRORS OF STATE LAW.

III. U.S. MAGISTRATE JUDGE DAVID MARTIN ERRED IN DISMISSING APPELLANT'S HABEAS CLAIM VI.

IV. U.S. MAGISTRATE JUDGE DAVID MARTIN ERRED IN DENYING APPELLANT'S PETITION FOR WRIT OF HABEAS CORPUS SUBSECTION 2241 BY NOT RULING UPON APPELLANT'S HABEAS CLAIMS II, III, VI, V and VII.

V. U.S. DISTRICT JUDGE ERNEST C. TORRES ERRED IN ADOPTING U.S. MAGISTRATE JUDGE DAVID MARTIN'S MARCH 20, 2007 REPORT AND RECOMMENDATION.

As the U.S. District Court for Rhode Island failed to consider five (5) of Petitioner's habeas claims before that Court, this Petition follows.

## JURISDICTION

"Although 28 U.S.C.S. 2241 confers habeas jurisdiction on the Supreme Court and district courts, it does not similarly confer jurisdiction on courts of appeal. Rather, it confers jurisdiction on any circuit judge within their respective jurisdiction." Dragenice v. Ridge, 389 F.3d 92 (4th Cir, 2004)

Petitioner has had no success in receiving full and proper litigation of all his habeas claims in any Rhode Island Court, be it federal or state, hence this present petition before this Circuit Justice. Maybe this Justice's prior work as a clerk for Justice Pettine has allowed this Justice to realize Petitioner's frustration (as Harvard Law Professor Alan Dershowitz encountered in his brief experience with the Rhode Island Courts.

"While States need not specially create courts competent to hear federal claims or necessarily to give courts authority specifically, it violates the

supremacy clause for a state court to refuse to hear a category of federal claims when the court entertains state law actions of a similar nature." Hewlett v. Rose, 496 U.S. 356 (1990).

The Rhode Island state courts have refused to acknowledge Petitioner's federal claims.

DEPUTY COMMONWEALTH ATTORNEY RAYMOND MORROGH'S PERJURED REQUISITION AFFIDAVIT INVALIDATES BOTH VIRGINIA GOVERNOR KAINE'S REQUISITION WARRANT AND RHODE ISLAND GOVERNOR CARCIERI'S RENDITION WARRANT AND HAS RESULTED IN PETITIONER'S FALSE ARREST AND ILLEGAL INCARCERATION IN VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION

In Deputy Commonwealth Attorney Raymond Morrogh's ("Morrogh") August 23, 2006 Requisition Affidavit (see Ex. 1), there are intentional misstatements of material facts, in violation of U.S. Code 18 subs. 1001 and 1621. Specifically, the following:

"In support of the said application I do hereby certify that:

1. The full name of the fugitive for whom extradition is asked is Michael George Keselica, who was in the State of Virginia at the time of the commission of the said crime.
2. In my opinion, the ends of public justice require that the said fugitive be brought to this State for trial, at the public expense.
3. In my opinion, I have sufficient evidence to secure the conviction of the said fugitive.
5. No other application has been made for a requisition for the said fugitive growing out of the same transaction herein alleged.
8. The nature of the crimes with which the said fugitive is charged are Violation of Probation on an original charge of Embezzlement and a Show Cause why his suspended sentence should not be imposed.

1. Petitioner was never in the State of Virginia, before, during or after the commission of the said crime (except for Petitioner's trial and several hearings) and Morrogh knows this to be a false statement as it was his office that argued during Petitioner's trial that even though Petitioner was never in

Virginia to commit his crime, or any acts associated with his crime, Virginia still had jurisdiction to prosecute Petitioner. See Keselica v. Commonwealth, 480 S.E. 2d 756 (1997). Furthermore, it was on this same argument, that Petitioner cannot be deemed a fugitive from justice, as Petitioner was never in the demanding state,[1] that Petitioner successfully contested extradition on, in June 4, 2004 (as well as on the fact that Morrogh's February 19, 2004 Requisition Affidavit (see Ex. 2) contained perjured affirmations). By stating that Petitioner "was in Virginia at the time of the commission of the said crime", Morrogh had made the extradition of Petitioner from Rhode Island to Virginia a mandatory proceeding, allowing both Governors no discretion in denying such a requisition request.

2. Petitioner had his trial on February 8, 1995 and his violation of probation hearing on September 17, 1999. Even the State of RI has stated there is no trial – see Ex. 4.
3. Petitioner was convicted of the original charge of Embezzlement on February 8, 1995 and of violating his probation on September 17, 1999.
5. This is the third such application – see Exhibits 1, 2 & 3.
8. This is not true as Petitioner's probation was revoked on September 17, 1999, one of the habeas arguments Petitioner successfully raised at his June 4, 2004 habeas extradition hearing in securing his release. The State of Rhode Island has conveyed to the Rhode Island Courts (see Ex. 4) that Petitioner is wanted by Virginia to serve a seven (7) year sentence, totally inopposite to Morrogh's sworn statement.

As stated by the U.S. District Court for the Eastern District of Virginia in the extradition case of Ex parte Slauson, 73 F. 666 (1896):

"The affidavit by which he charged the fraud is a flagrant perjury. His prosecution of this extradition proceeding is malicious. The governor

[1] Even the acts which violated Petitioner's probation did not occur in Virginia – they occurred in Maryland.

of Tennessee was deceived, and the requisition which he issued for Slauson was improvidently granted. The governor of Virginia was not advised of, and had no means of testing the truth of, the allegations of the requisition."

The Slauson Court held that since the requisition was improvidently issued, Slauson should be discharged on habeas corpus.

Governors Kaine and Carcieri were duped into issuing their Governors' Warrants by a requisition affidavit that is a flagrant perjury. The Governor of Virginia was deceived and the requisition affidavit submitted to him was improvidently granted. The Governor of Rhode Island was not advised of, and had no means of testing the truth of, the allegations of the requisition, as his execution of the Governor's Rendition Warrant was mandatory — he had no discretion, as Petitioner was falsely labeled a fugitive from justice from Virginia.

This is not harmless error but categorizes Petitioner in a class which the facts prove Petitioner does not belong but which obligates the Rhode Island Governor to have Petitioner arrested.

"A state should take care, within the limits of the law, that the rights of its people are protected against illegal action." Appleyard v. Massachusetts, 203 U.S. 222; 27 S.Ct. 122 (1906).

It is quite apparent from the facts provided above that the requisition was too blatantly false to justify issuance of the fugitive and Governor's warrants and Petitioner should be released.

In Michigan v. Doran, 439 U.S. 282; 99 S.Ct 530 (1978), the United States Supreme Court expressed the view that the Fourth Amendment applies in the extradition context.

In Gerstein v. Pugh, et al, 420 U.S. 103; 95 S.Ct. 854 (1975), the U.S. Supreme Court held that an arrest warrant issued solely upon a U.S. Attorney's information was invalid because the accompanying affidavits were defective.

Petitioner's arrest under Rhode Island Governor Donald Carcieri's Rendition Warrant was illegal and in violation of the Fourth Amendment to the U.S. Constitution, as the requisition affidavit was not merely defective - it was perjured (see page 1 of Exhibit 1: "I further certify that the said Raymond F. Morrogh, Deputy Commonwealth Attorney for the County of Fairfax, appeared before me this day, and after being duly sworn, stated that the facts contained in the foregoing petition were true to the best of his knowledge and belief.").

As stated in Kirkland v. Preston, 128 U.S. App. D.C. 148, 385 F.2d 670 (1967):

"The law appreciates the hardship which extradition can involve - not only the suppression of one's liberty, but his deportation from the state in which he lives into another jurisdiction which may be hundreds of miles from his home. The law accordingly surrounds the accused with considerable procedural protection to stave off wrongful rendition."

When a conviction is obtained by the presentation of testimony known to the prosecuting authorities to have been perjured, due process is violated. The clause cannot be deemed to be satisfied by mere notice and hearing if a State has contrived a conviction through the pretense of a trial which in truth is but used as a means of depriving a defendant of liberty through a deliberate deception of court and jury by the presentation of testimony known to be perjured. Such a contrivance is as inconsistent with the rudimentary demands of justice as is the obtaining of a like result by intimidation. (Mooney v. Holahan, 294 U.S. 103, 112 (1935).

Petitioner's due process rights, pursuant to the Fourteenth Amendment to the U.S. Constitution, were violated upon submission of Morrogh's perjured requisition affidavit and the State of Rhode Island's acceptance and presentation of this perjured document to the Rhode Island Courts. Therefore, Petitioner was illegally arrested under Rhode Island Governor Donald Carcieri's Rendition Warrant and must be released.

PETITIONER'S ARREST AS A FUGITIVE FROM JUSTICE FROM THE COMMONWEALTH OF VIRGINIA IS IN VIOLATION OF THE EXTRADITION CLAUSE, ARTICLE IV, SECTION 2, CLAUSE 2, OF THE U.S. CONSTITUTION

To be a fugitive from justice within the meaning of this clause, it is not necessary that the party charged should have left the state after an indictment found or for the purpose of avoiding a prosecution anticipated or begun. It is sufficient that the accused, having committed a crime within one state and having left the jurisdiction before being subjected to criminal process, is found within another State. Roberts v. Reilly, 116 U.S. 80 (1885). See also Strassheim v. Daily, 221 U.S. 280 (1911); Appleyard v. Massachusetts, 203 U.S. 222 (1906); Ex parte Reggel, 114 U.S. 642, 650 (1885).

But a defendant cannot be extradited if he was only constructively present in the demanding state at the time of the commission of the crime charged (Hyatt v. People ex rel. Corkran, 188 U.S. 691 (1903)). A defendant will be discharged on habeas corpus if he shows by clear and satisfactory evidence that he was outside the demanding state at the time of the crime. Hyatt v. People ex rel Corkran, 188 U.S. 691 (1903). See also South Carolina v. Bailey, 289 U.S. 412 (1933).

Rhode Island Governor Donald Carcieri's Warrant of Rendition, served upon Petitioner on October 5, 2006, raises a presumption that the accused is the fugitive wanted, and is sufficient to justify his arrest, detention and delivery to Virginia. In order to rebut this presumption, this Petitioner must prove beyond a reasonable doubt either that he was not present in Virginia at the time of the crime, or that he is not the person named in the warrant.

"Whether person sought under requisition for extradition is fugitive from justice of demanding state is a question of fact. If an inmate is not a fugitive from justice, within the meaning of the Constitution and statutory law, he is entitled to be discharged." South Carolina v. Bailey, 289 U.S. 412; 53 S.Ct 667 (1933); Illinois ex rel McNichols v. Pease, 207 U.S. 100; 28 S.Ct. 58 (1907);

Roberts v. Reilly, 116 U.S. 80; 6 S.Ct. 291 (1885).

Virginia's requisition application and Virginia Governor Timothy Kaine's Requisition Warrant (see Ex. 5) state that Michael George Keselica is a fugitive from justice, having violated the terms of his probation in Virginia and thereafter fled from the justice of this state and may have taken refuge in the State of Rhode Island. Rhode Island Governor Donald Carcieri's Rendition Warrant states that: "Michael George Keselica convicted with the crime of 'Crime Fugitive Charged With' represented to be a Fugitive From Justice" (See Ex. 6). Furthermore, Virginia's requisition application goes on to state in paragraph 1 (see Ex. 1) that Michael George Keselica was in the State of Virginia at the time of the commission of the said crime.

Petitioner can prove beyond a reasonable doubt that he is not, has never been, a fugitive from justice from the Commonwealth of Virginia.

On February 8, 1995, after a jury trial and the denial of Petitioner's motion to dismiss for lack of jurisdiction (Petitioner never set foot in Virginia to commit a crime), Petitioner was convicted of one count of embezzlement in Fairfax County, Virginia.

As affirmed by the Court of Appeals and the Supreme Court for Virginia in Keselica v. Commonwealth, 24 Va App 115, 480 S.E.2d 755 (1997):

> "the record established that appellant, while located in Maryland, set in motion a scheme intended to produce and which did produce immediate detrimental effects in Virginia."

The Virginia appellate courts further opinioned that even though Petitioner never crossed state lines from Maryland into Virginia, Virginia had jurisdiction to try and convict Petitioner of embezzlement pursuant to Strassheim v. Daily, 221 U.S. 280, 285 (1911)

> "Acts done outside a jurisdiction, but intended to produce and producing detrimental effects within it, justify a state in punishing the cause of the harm as if he had been present at the effect, if the state should succeed in getting him within its power[2]."

[2] Virginia succeeded when Petitioner, under threat by the investigating detective that he would come to Petitioner's house in Maryland and arrest him in front of his wife and two daughters, came across state lines to turn himself into the investigating Virginia detective.

However, as stated in People ex rel Merklen v. Enright, 217 A.D. 514; 217 N.Y.S. 288 (1926), quoting the U.S. Supreme Court in Daily:

"Of course we must admit that it doesn't follow that Daily is a fugitive from justice. It is established in the law of rendition that while a person may be punished for acts committed without the State producing detrimental effects within it, the power to extradite, as distinguished from the power to prosecute and punish, rests wholly upon subs. 2 of section 2 of article 4 of the U.S. Constitution. It is held not to exist where the demanding State bases jurisdiction upon constructive rather than actual presence within its border at the time of the commission of the alleged offense."

The U.S. Supreme Court in Hyatt v. People ex rel. Corkran, 188 U.S. 691; 23 S. Ct 456 (1903) said the following:

"The exercise of jurisdiction by a State to make an act committed outside its borders a crime against the State is one thing, but to assert that the party committing such an act comes under the Federal statute, and is to be delivered up as a fugitive from justice of that State, is quite a different proposition."

Clearly, if Virginia is extraditing Petitioner under the pretext that the commission of Petitioner's crime of embezzlement occurred in Virginia – a fugitive extradition under the Extradition Clause of the U.S. Constitution, then this would be a totally false statement and extradition, as affirmed by the Virginia appellate courts. If the extradition of Petitioner from Rhode Island to Virginia is to occur it must fall under the non-fugitive provision of the Uniform Criminal Extradition Act.

The U.S. Supreme Court affirmed Petitioner's non-fugitive status in their decision in Hyatt v. People ex rel. Corkran:

"One who was not within a state when the crime of larceny or false pretense was, if ever, committed therein, cannot be deemed a "fugitive from justice" within the meaning of U.S. Rev. Stat. 5278, providing for

the interstate extradition of a fugitive from justice on demand of the executive of the state from which he has fled."

Furthermore, Petitioner is not a fugitive from justice from Virginia for violating the terms of his probation and thereafter fleeing from the justice of that State and taking refuge in the State of Rhode Island, as cited in Virginia Governor Kaine's Requisition Warrant.

On September 17, 1999, Petitioner's Virginia probation was revoked for failure to pay restitution and failure to be truthful to his Maryland probation officer regarding travel instructions to Rhode Island and Petitioner was sentenced to seven (7) years in the Virginia Penitentiary and his restitution reduced to a civil judgment (see Ex. 7).

One week later, Petitioner was released on a $7500 cash appeal bond, contingent upon such time as the Court of Appeals renders a decision (see Ex. 8). Petitioner was given judicial permission to leave Virginia after his probation was revoked.

"When bail is given, the principal is regarded as delivered to the custody of his sureties. Their dominion is a continuance of the original imprisonment." [And seizure of the principal by his sureties is likened to the rearrest by the sheriff of an escaping prisoner]. Taylor v. Taintor, 16 Wall (83 U.S.) 366, 371.

Has Virginia not bindingly waived their right to extradite Petitioner as a fugitive from justice, when Virginia voluntarily returned Petitioner's Appeal Bond on November 18, 2002 (see Ex. 9)?

How can Petitioner be a fugitive from justice, pursuant to Virginia Governor Kaine's Requisition Warrant, from the Commonwealth of Virginia for violating the terms of his probation and thereafter fleeing from Virginia and then taking refuge in Rhode Island, when the facts say otherwise? He can't be.

"Whether person sought under requisition for extradition is fugitive from justice of demanding state is a question of fact." Roberts v. Reilly,

Petitioner has rebutted the presumption raised by Rhode Island Governor Carcieri's Warrant of Rendition that Petitioner is a fugitive from justice, "beyond a reasonable doubt," (as Petitioner had done in Maryland on June 4, 2006) by proving that Petitioner was not in Virginia:

(1) at the time of the commission of the crime;

(2) not present at the time he was on probation (11/29/95 - 9/17/99) (Petitioner lived in Maryland, worked in Maryland, and was also on supervised probation in Maryland);

(3) nor was Petitioner present in Virginia at the time of the events alleged in Virginia's Amended June 5, 2001 violation of probation bench warrant ("The fact that the original crime was committed in the demanding state, and not the later probation violation, is controlling for extradition purposes; thus, there is no constitutional requirement that the probation be shown to have committed an additional crime while he was considered to be a fugitive." Ingram v. Dodd, 243 Ga 788; 256 S.E. 2d 778), but, more to the point;

(4) Petitioner was not on probation in Virginia at any time after September 17, 1999.

In habeas corpus proceeding involving extradition, courts cannot consider question of whether or not Petitioner is guilty of violating probation but only if the Petitioner was on probation and therefore a fugitive from justice (see Treseder v. Remann, 165 Wash. 92, 4 P.2d 866 (1931)).

"We consider it to be Hornbook law that a convicted individual may be extradited as a fugitive when he, prior to the revocation of parole, seeks asylum in the state from which he is sought to be extradited." Travis v. People, 135 Colo. 141, 308 P.2d 997 (1957).

One week after Petitioner's probation was revoked he was given judicial permission to leave Virginia. The crime for which extradition is sought is not Petitioner's failure to appear according to promise or bond.

"A paroled convict leaving the state even by consent of the paroling authority becomes, on revocation of such parole, a fugitive from the justice

of that state within the meaning of U.S. Const. Art. IV, subs. 2 and the extradition statutes executing it, 18 U.S.C. subs. 3182." Ex parte Trignani, 80 A.2d 371, 373 (1951). Petitioner's probation was revoked before he left the state, with the consent of the trial court, on an appeal bond.

In extradition proceedings this Court is controlled by the constitution of the United States and the Act of Congress passed pursuant thereto, and are bound by the decisions of the Supreme Court of the United States on the question here involved - Is Petitioner a fugitive from justice from Virginia?

In Hyatt v. People ex rel. Corkran, 188 U.S. 691; 23 S.Ct. 456 (1903) the Supreme Court "held that defendant in error claims that he was absent from Tennessee when the crimes occurred was uncontradicted. The Court further held that mere constructive presence in the demanding state was not sufficient for extradition under subsection 5278. The Court also held that because the jurisdictional prerequisite of presence in the demanding state at the time of the offense was lacking, defendant in error was entitled to be discharged.

In the present case before this Justice, Petitioner was wrongfully arrested and incarcerated as a fugitive from justice and must be released.

THE EXTRADITION DOCUMENTS ARE TECHNICALLY DEFICIENT THUS VIOLATING ONE OF THE FOUR PRONGS OF DORAN AS SET FORTH BY THE UNITED STATES SUPREME COURT

The Extradition Act of 1793, now 18 U.S.C.S. subs. 3182, as affirmed by the U.S. Supreme Court in Michigan v. Doran, 439 U.S. 282; 99 S.Ct. 530 (1978), leaves only four issues open for consideration before the fugitive is delivered up to the demanding state: (a) whether the extradition documents on their face are in order; (b) whether the petitioner has been charged with a crime in the demanding state; (c) whether the petitioner is the person named in the request for extradition; and (d) whether the petitioner is a fugitive.

The extradition documents in Petitioner's case, on their face, are not in order:

1. The Rhode Island Governor's Rendition Warrant is facially invalid as it states that Petitioner is wanted as a fugitive from justice for the crime of "crime fugitive charged with." "Crime fugitive charged with" is not a crime.
2. The extradition documents – Morrogh's Requisition Affidavit, Virginia Governor Kaine's Requisition Warrant and Rhode Island Governor Carcieri's Rendition Warrant all state that Petitioner is wanted as a fugitive from justice pursuant to the Extradition Clause of the U.S. Constitution, when these documents should have been issued pursuant to the non-fugitive provision of the Uniform Criminal Extradition Act. Petitioner's Argument II re-affirms the fact that Petitioner is not a fugitive from justice, hence these "extradition documents" are technically deficient, for the following facts:

(i). Petitioner never set foot in Virginia during the commission of the original crime of embezzlement (nor before or after, except for trial and several hearings) – see Keselica v. Commonwealth, 480 S.E.2d 756 (1997);

(ii). Petitioner never set foot in Virginia to commit any of the acts alleged to have violated the terms of his probation ("The fact that the original crime was committed in the demanding state, and not the later probation violation, is controlling for extradition purposes." Ingram v. Dodd, 243 Ga 788; 256 S.E.2d 778);

(iii). Petitioner's probation was terminated by Order of the Court on September 17, 1999 (see Ex. 7);

(iv). Petitioner's probation expired on November 29, 2003 (and the violation of probation [requisition] show cause bench warrant is dated August 16, 2004) (see Ex. 13);

(v). Petitioner was given judicial permission to leave Virginia, via an appeal bond (see Ex. 8), and said bond was returned to Petitioner (see Ex. 9)

3. Deputy Commonwealth Attorney Raymond Morrogh's Requisition Affidavit contains false statements of material fact (see habeas claim I) and failed to specify the manner, place, or time by which Petitioner's crime was committed ("an affidavit failing to state any of the essential facts of the crime, or the manner, place, or time in which the crime was committed, held insufficient." Application of Burgher, 134 NYS.2d 435 (1954)).

4. The Office of the Attorney General for Rhode Island has consistently represented to the Rhode Island Courts that Petitioner is wanted by Virginia to serve a seven (7) year sentence (see Ex. 4). However, the parties that count in this extradition proceeding – Deputy Commonwealth Attorney Raymond Morrogh, who submitted the requisition affidavit to initiate the extradition proceedings against Petitioner (see Ex. 1) and Virginia Governor Timothy Kaine, who submitted his Requisition Warrant (see Ex. 5) to Rhode Island Governor Carcieri, are representing to the State of Rhode Island that Petitioner is wanted for a violation of probation show cause hearing. In Petitioner's extradition case, the discrepancy between the demand submitted by Virginia Governor Kaine – Petitioner is wanted as a

fugitive from justice on a violation of probation show cause bench warrant (see Ex.13) and the warrant presented by the Office of the Attorney General, to the Rhode Island Courts, which was included in the requisition package, as the basis for Virginia's extradition demand of Petitioner, to serve a seven (7) year sentence (see Ex.14), invalidates this extradition proceeding, as it constitutes a nonobservance of the form required by law for Petitioner's extradition ("Here the original requisition was insufficient because the demand recited as its jurisdictional basis that relator stood charged of a crime by virtue of a complaint and warrant, whereas a supporting affidavit showed that he had been convicted of the crime and broken the terms of his bail, which is a separate jurisdictional basis. Relator was discharged, not because the court decided he was not a fugitive from justice, but because the contradiction of jurisdictional bases between the demand and the supporting papers constituted a nonobservance of the form required by law for his extradition." People ex rel. Ritholz v. Sain, 26 Ill. 2d 455 (1962)).

18 U.S.C.A. subsection 662 states that:

"Certification by Governor, demanding return of fugitive, of documents required by statute as authenticated, is sufficient to extradition in absence of showing that documents are spurious." Morrogh's Requisition Affidavit is more than "spurious" – it's perjured.

Therefore, the extradition documents are deficient, not only because they seek Petitioner's rendition as a fugitive, versus the fact that Petitioner's rendition should be as a non-fugitive, but Virginia's requisition affidavit (besides being perjured) and Governor's Warrant seeks Petitioner's return for a violation of probation hearing, versus the fact that the State of Rhode Island is representing to the Rhode Island Courts that Virginia is seeking Petitioner's extradition return to serve a seven (7) year sentence.

Despite a failed extradition attempt of Petitioner in 2004, Virginia has never attempted to amend its Requisition Affidavit or Governor's Warrant.

PETITIONER'S CURRENT EXTRADITION PROCEEDING IS IN VIOLATION OF PETITIONER'S FIFTH AMENDMENT GUARANTEE AGAINST DOUBLE JEOPARDY

In Ashe v. Swenson, 397 U.S. 436, 90 S. Ct. 1189 (1970), the Supreme Court of the United States concluded that collateral estoppel, or issue preclusion, was part of the guarantee under U.S. Constitutional Amendment V against double jeopardy.

"Collateral estoppel" means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future proceeding

Collateral estoppel applies to Petitioner's extradition proceeding in Rhode Island as the question of whether Petitioner is a fugitive from justice for violating the terms of his probation was already decided on June 4, 2004.

Therefore, pursuant to the doctrine of collateral estoppel, or issue preclusio Petitioner's current habeas extradition proceeding in Rhode Island must be dismissed as all material issues to this current extradition proceeding were fully and fairly litigated in Maryland on June 4, 2004. Virginia does not get two bites of the apple (this is actually their 4th bite).

The Double Jeopardy Clause is a guarantee "that the State with all its resources and power [shall] not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity." Green v. United States, 355 U.S. 184, 187 (1957).

The extradition case of Matter of Strauss, 197 U.S. 324, 25 S. Ct. 535 (1905) states:

"For apprehension of a fugitive under Section 3182 is plainly a criminal arrest since it deprives him of his liberty for the purpose of insuring his

presence at a criminal trial."

Petitioner was initially arrested as a fugitive from justice from Virginia (see Ex. 19) on a violation of probation show cause bench warrant, on June 21, 2001, in Maryland. Denied bail, Petitioner was incarcerated twenty-nine (29) days until the State of Maryland nolle prossed this fugitive complaint. On December 31, 2003, Petitioner was again arrested as a fugitive from justice from Virginia (see Ex. 10) on the same violation of probation show cause bench warrant, in Maryland. Denied bail again, Petitioner was incarcerated forty-eight (48) days until the State of Maryland dismissed the fugitive charge against Petitioner. One day later, Petitioner was again arrested as a fugitive from justice from Virginia (see Ex. 11) on the same violation of probation show cause bench warrant, in Maryland. Denied bail again, Petitioner was incarcerated one hundred and five (105) days until Petitioner's release on a Writ of Habeas Corpus, successfully contesting extradition as a fugitive from justice from Virginia for violating the terms of his probation. Among the requisition documents submitted by the Commonwealth of Virginia in seeking Petitioner's extradition return was the January 1995 Embezzlement Indictment which resulted in Petitioner's Embezzlement conviction on February 8, 1995.

On August 3, 2006, Petitioner was again arrested as a fugitive from justice from Virginia on the same violation of probation show cause bench warrant, this time in Rhode Island. Denied bail again, Petitioner has been incarcerated, to date, a total of two hundred eighty-eight (288) days. Among the requisition documents submitted by the Commonwealth of Virginia in seeking Petitioner's extradition return is the same January 1995 Embezzlement Indictment submitted during Petitioner's extradition proceedings in Maryland in 2004.

As the U.S. Supreme Court decided in the Rhode Island extradition case of Bassing v. Cady, 208 U.S. 386, 28 S.Ct. 392 (1908):

"A second indictment for the same offense may serve as the basis for the second extradition of a person, as a fugitive from justice, without violating any rights secured to him by the federal constitution, or laws, where the first indictment on which the accused was originally extradited, was dismissed on motion of the state's attorney before the accused was placed in jeopardy."

Virginia's January 1995 Embezzlement Indictment (see Ex. 12) is the same identical indictment used to secure Petitioner's conviction on February 8, 1995 and is the same identical indictment used in both of Petitioner's habeas extradition proceedings – the June 4, 2004 bench trial in Maryland and the January 5, 2007 bench trial in Rhode Island.

The U.S. Supreme Court in Richardson v. U.S., 468 U.S. 317; 104 S.Ct 3081 (1984) stated that:

"The fundamental principle underlying Burks, and indeed most of our double jeopardy cases, is that the prosecution is entitled to one, and only one, full and fair opportunity to convict the defendant. When the prosecution has failed to present constitutionally sufficient evidence, it cannot complain of unfairness in being denied a second chance, and the interests in finality, shared by the defendant and society, strongly outweigh the reasons for a retrial."

"A fugitive has neither more nor less constitutional rights than has an incarcerated prisoner." Johnson v. Matthews, 86 U.S. App. D.C. 376; 182 F.2d 677 (1950).

"The Double Jeopardy Clause was intended to protect against governmental oppression." Justices of Boston Municipal Court v. Lydon, 466 U.S. 294; 104 S.Ct. 1805 (1984).

Virginia only gets "one bite of the apple", not four. Furthermore, it wasn't the fact that Virginia erred in providing more evidence – Virginia's evidence was not constitutionally sufficient, the evidence failed to establish

could not prove, that Petitioner is a fugitive from justice – no evidence could.

Obviously, Petitioner has a strong interest in the finality of these extradition proceedings. To date, Petitioner has lost a total of 470 days of his personal liberty – his freedom, contesting Virginia's illegal extradition attempt of Petitioner. That meets the definition, as stated in the U.S. Constitution, of the double jeopardy clause:

> "no person shall be subject for the same offense to be twice put in jeopardy of life and limb."

Although its text mentions only harm to life or limb, the Amendment covers imprisonment and monetary penalties.

If the U.S. Supreme Court expressed the view that the Fourth Amendment applies in the extradition context (see Michigan v. Doran), then surely it must also hold that the Fifth Amendment applies in the extradition context. As the Doran Court stated:

> "The extradition process involves an extended restraint of liberty following arrest even more severe than that accompanying detention within a single State. Extradition involves, at a minimum, administrative processing in both the asylum State and the demanding State, and forced transportation in between. It surely is a significant restraint on liberty.

Furthermore, as stated in U.S. v. Jarvis, 7 F.3d 404 (1993):

> "The double jeopardy guarantee of U.S. Const. Amend V creates not only the right to be free from multiple punishments for the same offense, but also the right to be immune from multiple prosecutions for the same offense."

Petitioner has faced four prosecutions for allegedly being a fugitive from justice from Virginia and with it multiple punishments – incarceration for periods of 29 days, 48 days, 105 days and now 288 days and counting.

The issue as to whether or not Petitioner is a fugitive from justice from Virginia for having violated the terms of his probation was decided on June

4, 2004 and constitutes an estoppel upon a reinvestigation of the same question.

Habeas corpus proceedings involving extradition are considered criminal in nature and invoke Petitioner's due process rights, including Petitioner's Fifth Amendment rights. Petitioner's writ of habeas corpus must be granted as Petitioner's current incarceration and extradition proceeding is in violation of Petitioner's Fifth Amendment right against double jeopardy.

"Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision precludes relitigation of that issue on a different cause of action involving a party to the first case." Allen v. McCurry, 449 U.S. 90, 101 S.Ct. 411 (1980).

THE PETITION FOR WRIT OF HABEAS CORPUS SHOULD BE GRANTED UNDER ARTICLE IV, SECTION 1, THE FULL FAITH AND CREDIT CLAUSE, OF THE UNITED STATES CONSTITUTION AND THE DOCTRINE OF RES JUDICATA

Petitioner is currently illegally incarcerated, as Petitioner's release on June 4, 2004 (see Ex. 15), on a Writ of Habeas Corpus challenging his arrest under Maryland Governor Robert Ehrlich's Rendition Warrant, as a fugitive from justice from Virginia, for violating the terms of his probation, is res judicata to this current extradition proceeding in Rhode Island and Petitioner must be released by this Circuit Court Justice under Article IV, Section 1 of the U.S. Constitution — the Full Faith and Credit Clause.

On February 18, 2004, Virginia sought, for the third time, to extradite Petitioner from Maryland to Virginia on a violation of probation warrant. The two prior extradition attempts were dismissed on procedural grounds, specifically, the failure of Virginia to obtain a governor's warrant within the required thirty day period. This time, however, Virginia obtained a governor's warrant in a timely fashion. Petitioner contested extradition by filing a petition for writ of habeas corpus in the Circuit Court for Washington County, Maryland. At issue was whether Petitioner was a "fugitive" (for violating the terms of his probation), within the meaning of the Extradition Clause - Article IV, section 2, clause 2 of the U.S. Constitution.

After hearing, the writ was granted on June 4, 2004 for "good cause shown and in the interests of justice."

In Morse v. U.S., 267 U.S. 80; 45 S.Ct. 209 (1925), the U.S. Supreme Court held that:

"No discharge by writ of habeas corpus will operate as a bar to further proceeding in the same cause, unless the inquiry on the petition for writ involves a full investigation into the merits of the case."

In Collins v. Loisel, 262 U.S. 426; 43 S.Ct. 618 (1923), the U.S. Supreme Court held that:

"The instant extradition order, based upon affidavits identical to those used in a prior extradition proceeding in which appellant was discharged on habeas corpus due to procedural irregularities, and did not go to the issue of the propriety of appellant's detention, is not res judicata." "A judgment in habeas corpus proceedings discharging a prisoner held for preliminary examination may operate as res judicata."

As supported by these U.S. Supreme Court res judicata extradition cases, Petitioner's current extradition proceeding in Rhode Island should be dismissed according to the principle of res judicata as Petitioner's habeas extradition hearing [and release] in Maryland on June 4, 2004 went to the propriety of Petitioner's detention.

"Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." Allen v. McCurry, 449 U.S. 90; 101 S.Ct. 411 (1980).

Other cases demonstrate this tenant. For instance, in People ex rel. ChaKouian v. Hoy, 183 N.Y.S. 2d 980 (NY 1959), the petitioner was wanted as a fugitive from Massachusetts. He was arrested in East Providence, Rhode Island on the fugitive complaint and held for extradition proceedings. A governor's warrant was obtained and habeas corpus proceedings instituted in Providence, Superior Court. The trial justice granted petitioner's writ of habeas corpus and released him, finding that he was not a fugitive, since he was not within the Commonwealth of Massachusetts at the time of the commission of the offense. One year later, petitioner was arrested in New York on the same fugitive complaint from Massachusetts. Once again, Massachusetts sought, and obtained, a governor's warrant. In granting the writ, the New York Supreme Court gave full faith and credit to the Rhode Island Court decision. Specifically,

the question of fact decided by the Rhode Island Court, whether the accused was in the demanding state at the time of the commission of the offense, was previously decided by Rhode Island and given full faith and credit, pursuant to Article IV, subsection 1 of the U.S. Constitution.

As Providence Superior Court was considered a court of competent jurisdiction to consider the question as to whether the accused (Chakouian) was a fugitive, so also is Maryland Circuit Court a court of competent jurisdiction to consider the issue of whether Petitioner was a fugitive from Virginia. The Maryland Circuit Court granted the writ of habeas corpus finding that Petitioner did not qualify as a fugitive under the Extradition Clause of the U.S. Constitution.

The same parties and issues are now before this Justice for adjudication. Since this issue was fully litigated on June 4, 2004, the ruling of the Maryland Circuit Court should be given effect here and Petitioner released, pursuant to the doctrine of res judicata,[3] as well as the full faith and credit clause – Article IV, subs. 1, of the U.S. Constitution.

"The constitutional command of full faith and credit, as implemented by Congress, requires that "judicial proceedings shall have the same full faith and credit in every court within the United States as they have by law or usage in the courts of such State from which they are taken." "By the Constitutional provision for full faith and credit, the local doctrines of res judicata, speaking generally, become a part of national jurisprudence, and therefore federal questions cognizable here." Riley v. New York Trust Co., 315 U.S. 343, 349.

Other U.S. Supreme Court cases on point state the following:

"The judgment of the Nebraska Supreme Court was res judicata as to all issues, including the issue of jurisdiction and it was binding on the District

[3] The doctrine of res judicata is only inapplicable in an international extradition proceeding – see Hooker v. Klein, 573 F.2d 1360 (1978) and Exhibit 16.

Court under the Full Faith and Credit Clause of the Constitution and the federal statute enacted to implement it." Durfee v. Duke, 375 U.S. 106; 84 S.Ct. 242 (1963).

"Federal courts are required by 28 U.S.C.S. 1738, which provide that state judicial proceedings are to have the same full faith and credit in every court within the United States as they have in the state's own courts, to give preclusive effect to state court judgments whenever the courts of the state from which the judgments emerged would do so." Allen v. McCurry, 449 U.S. 90; 101 S.Ct. 411 (1980).

By the terms of 28 U.S.C. subs. 1738-1739, the rule pertains not merely to recognition by state courts of the records and judicial proceedings of courts of sister states but to recognition by "every court within the United States," including recognition of the records and proceedings of the courts of any territory or any country subject to the jurisdiction of the United States. The federal courts are bound to give to the judgments of the state courts the same faith and credit that the courts of one State are bound to give to the judgments of the courts of her sister state.

We, as Americans, cannot blithely ignore the full faith and credit clause of both the Federal and State Constitutions, as its fruition is written in the blood of patriots.

This patriot must be released for the Full Faith and Credit that should be given to Petitioner's June 4, 2004 habeas release in Maryland.

CONCLUSION

The Extradition Act of 1793, now 18 U.S.C.S. 3182, leaves only four issues open for consideration before the fugitive is delivered up: (a) whether the extradition documents on their face are in order; (b)whether the petitioner has been charged with a crime in the demanding state; (c)whether the petitioner is the person named in the request for extradition; and (d)whether the petitioner is a fugitive.

Petitioner has conclusively proven against (a) and (d) and therefore must be released.

Petitioner has been incarcerated ten (10) months, to date, for a cause of action already successfully litigated by Petitioner.

Petitioner has been incarcerated ten (10) months, to date, on a perjured requisition affidavit from the demanding state.

This is Petitioner's fourth fugitive arrest for the same issue, same cause, same indictment. Therefore, the June 4, 2004 judgment of the Maryland Court is res judicata to the current extradition proceeding against Petitioner here in Rhode Island and bars any further proceedings in Rhode Island on the same charges - fugitive from justice from Virginia for violating probation and the reimprisonment of this Petitioner is unlawful and Petitioner is entitled to be released from custody.

Protection against unjustifiable vexation and harassment incident to repeated arrests for the same alleged crime must ordinarily be sought, not in constitutional limitations or treaty provisions, but in a high sense of responsibility on the part of the public officials charged with duties in this connection.

As "States and Territories may invoke the power of federal courts to enforce against state officers this and other rights created by federal statute, including equitable relief to compel performance of federally-imposed duties" (Puerto Rico v. Branstad, 483 U.S. 219 (1987)), Petitioner is invoking the power of this federal circuit justice to enforce Petitioner's rights under the Extradition Act of 1793 and the Extradition Clause of the U.S. Constitution and grant Petitioner's Petition for Writ of Habeas Corpus.

Respectfully submitted,

Michael Keselica
#131867
P.O. Box 8249
Cranston, RI 02920

CERTIFICATION

I HEREBY CERTIFY that on this 6th day of June, 2007, a copy of the foregoing was mailed postage paid first class to Christopher Bush, Office of the Attorney General for Rhode Island, 150 So. Main Street, Providence, Rhode Island 02903.

Michael Keselica